NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DANIEL JOE KABINTO, *Appellant.*

No. 1 CA-CR 24-0414

FILED 05-15-2025

Appeal from the Superior Court in Coconino County
No. S0300CR202400016
The Honorable Theodore Campagnolo, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**  Defendant Daniel Kabinto appeals from his probation revocation and resulting sentence. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**  In 2024, Kabinto pled guilty to one count of possession of drug paraphernalia, a class 6 felony, and one count of shoplifting, a class 1 misdemeanor. The trial court placed Kabinto on three years' intensive probation.

**¶3**  The trial court provided Kabinto with a written copy of his probation terms and conditions, which required, *inter alia*, that Kabinto: (1) obey all criminal laws ("Term One"), (2) report to the adult probation department ("APD") as directed ("Term Three"), and (3) provide APD with his current address ("Term Five"). Kabinto signed the following acknowledgment: "I acknowledge receipt of the conditions of probation and any attachments added. I understand that by not abiding by the conditions of probation my probation could be revoked and the Court may sentence me in accordance with the law."

**¶4**  The following month, Kabinto met with APD. Because he was homeless, Kabinto named a shelter as his residence. APD directed Kabinto to report in person each Wednesday.

**¶5**  Within days, however, Kabinto violated his probation. Kabinto agreed to serve eight days in jail followed by residential treatment. But he "self-discharged" from the residential treatment facility just days later, did not return to the shelter, and failed to report for his Wednesday check-in with APD.

**¶6**  The next day, Kabinto was arrested after "refusing to leave" a Circle K, taking "a fighting stance multiple times before [police] were able to calm him down," and refusing to provide police with his identification.

Once arrested, police found a temporary paper license with Kabinto's name on it.

¶7  APD petitioned to revoke Kabinto's probation, alleging he violated Terms One, Three, and Five of his probation. At his own request, and after much discussion with the trial court, Kabinto represented himself at the probation violation hearing.

¶8  At the probation violation hearing, Kabinto's probation officer testified as outlined, *supra* ¶¶ 4–6. She also stated that Kabinto had called her to inform he was considering leaving the residential treatment facility "because he was disrespected by another patient." The probation officer "advised [Kabinto] against the self-discharge" and stated that Kabinto "did not specify a date when he was going to be self-discharging."

¶9  For his part, Kabinto testified he went to APD on Tuesday after self-discharging from the residential treatment facility but arrived after the office had closed for the day. He acknowledged he failed to report to APD on Wednesday as required, stating, "I take full responsibility for that. [I]t was my mistake." He also testified he stayed at a friend's house after leaving the residential treatment facility, and that if there were no records of him previously staying at the shelter, it was because he "go[es] by a different name" there, "one that [he] never mentioned to [APD]."

¶10  As for the incident at Circle K, Kabinto testified he went there "to use the bathroom and buy me some food to eat." While in the bathroom, "[t]he store clerk walked in [and] just blatantly spouted, I'll call the cops on you." Kabinto stated he then left the store, but the store clerk continued to "yell" at him. "I didn't even respond. I just [] continued walking out of the store." When asked about his refusal to provide his name to police, Kabinto stated, "[t]hey already had my name. They already [] told me my name."

¶11  The trial court found Kabinto had violated Terms One, Three, and Five of his probation. After finding a single mitigating circumstance (alcohol addiction) and several aggravating circumstances (including three prior felonies, thirty misdemeanors, failure to complete court-ordered treatment, and an inability to comply with probation terms over a short period of time), the court revoked Kabinto's probation and sentenced him to a slightly aggravated term of one and a half years' imprisonment for the class 6 felony, with credit for time served for the class 1 misdemeanor.

¶12  This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4033(A)(1).

## DISCUSSION

**¶13** Kabinto does not challenge the trial court's finding that he violated either Term Three or Term Five of his probation. *State v. Gortarez*, 141 Ariz. 254, 262 (1984) (holding issues not raised in appellate briefing "must be considered waived"). According to the acknowledgment Kabinto signed, *supra* ¶ 3, a violation of either term justified the court revoking Kabinto's probation. Instead, Kabinto only challenges the court's finding that he violated Term One when it considered "unreliable double hearsay from the unidentified Circle K clerk." Because Kabinto did not object to the store clerk's statements at the probation violation hearing, we review for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶14** At a probation violation hearing, the State bears the burden of proof by a preponderance of the evidence that a probationer violated a condition of his probation. Ariz. R. Crim. P. 27.8(b)(3). The rules of evidence are relaxed at such hearings and the trial court "may receive any reliable evidence, including hearsay, that is not legally privileged." *Id.* "[H]earsay is unreliable when the speaker is not identified." *Plowman v. Ariz. State Liquor Bd.*, 152 Ariz. 331, 337 (App. 1986).

**¶15** Despite Kabinto's contention to the contrary, the Circle K clerk was identified (though not by name) as the person who made statements on the night Kabinto was arrested. And though Kabinto urges us to consider the "level of [the out-of-court] speaker on the hearsay ladder" and deem the store clerk's statements unreliable, *see State v. Portis*, 187 Ariz. 336, 339 (App. 1996), that is not this court's role. The trial court stands in the best position to determine witness credibility and we "will not reverse any finding of the trier of fact unless that finding is arbitrary and unsupported by any theory of the evidence." *State v. Stotts*, 144 Ariz. 72, 79 (1985). Furthermore, because Kabinto did not object at the probation violation hearing to the hearsay statements, the evidence was unchallenged and thus "considered reliable." *Id.* at 82. Kabinto has failed to show error, fundamental or otherwise.

## CONCLUSION

¶16        We affirm Kabinto's sentence.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR