IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BOYD R. MARTINEZ, *Plaintiff/Appellee,*

*v.*

DONTE ESTES, *Defendant/Appellant.*

No. 1 CA-CV 23-0639 FC

FILED 09-10-2024

Appeal from the Superior Court in Yuma County
No. S1400PO202300574
The Honorable Roger A. Nelson, Judge

**VACATED**

COUNSEL

LisaLaw LLC, Mesa
By Lise R. Witt
*Counsel for Defendant/Appellant*

Schneider & Onofry P.C., Phoenix
By Jon D. Schneider, Dee R. Giles
*Counsel for Plaintiff/Appellee*

**OPINION**

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Judge Michael J. Brown joined. Presiding Judge Samuel A. Thumma concurred in part and dissented in part.

**C A M P B E L L**, Judge:

¶1        Donte Estes appeals the continuance of an injunction against harassment imposed against him after an evidentiary hearing. He challenges the court's finding that "[a] series of acts . . . that would cause a reasonable person to be seriously alarmed, annoyed or harassed" occurred. A.R.S. § 12-1809(T)(1)(a). Because the record does not adequately support that Estes engaged in a series of acts of harassment, we vacate the injunction.[1]

**BACKGROUND**

¶2        Boyd Martinez (Father) shares custody of his two children with Mother. At the time of the alleged incident giving rise to the injunction, his daughter, Brooke[2], was six years old. When Father arrived to pick Brooke up from Mother's house one day in August 2023, he noticed Brooke was acting strangely. Father later testified that she was "shut down," "had her head down," "didn't want to talk," and was quiet. When Father asked her what was wrong, she replied, "He won't leave the house," referring to Estes, Mother's "friend, the neighbor who's always over." Brooke told Father that Estes touched her on her thigh and then her chest. She explained that she felt "shaky," "scared," and "bad," and that she "tried to push him out [of the house]."

¶3        Father called the Yuma Police Department to report the incident. The next day, he took Brooke to Amberly's Place for a forensic interview. After the interview, the detective told Father there was insufficient evidence to bring criminal charges.

---

[1]        We issued an order on July 18, 2024, vacating the injunction against harassment with a decision to follow.

[2]        We use a pseudonym to protect the identity of the child.

¶4            Father then sought an injunction against harassment, asking the court to prohibit Estes from being around both his children. The court granted an ex parte injunction, which Father had served. Estes timely requested an evidentiary hearing.

¶5            At the hearing, Father recounted Brooke's allegations. After Father's direct testimony, Estes moved to dismiss the petition. He asserted that Father failed to allege two separate acts of harassment as required both by rule and by statute. *See* Ariz. R. Protective Ord. P. 25(b) (requiring petition to "allege a series of specific acts of harassment," meaning "at least two events"); A.R.S. § 12-1809(C)(3), (T)(1)(a) (requiring petition to specifically state "[a] series of acts"). The court denied the motion, finding sufficient evidence of a series of acts: "It was a touch to the thigh and a touch to the chest. That's two." Both Estes and Mother testified. After hearing closing arguments, the court continued the injunction, finding "by a preponderance of the evidence that acts of harassment have occurred, a series of acts." Estes timely appealed.

## DISCUSSION

¶6            Estes primarily challenges the continuance of the injunction against harassment based on Father's failure to show that two separate acts of harassment occurred. *See* Ariz. R. Protective Ord. P. 25(b). He argues the court's denial of his motion to dismiss and the continuance of the injunction were in error. Estes also argues the court engaged in irrational bias when it upheld the injunction and improperly held the contested injunction hearing 11 business days after his request. We address each argument in turn.

## I.      Sufficiency of the Evidence

¶7            We review orders granting injunctions against harassment for an abuse of discretion. *LaFaro v. Cahill*, 203 Ariz. 482, 485, ¶ 10 (App. 2002). An abuse of discretion occurs "when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Mahar v. Acuna*, 230 Ariz. 530, 534, ¶ 14 (App. 2012) (citation and internal quotation marks omitted). We do not substitute our judgment for the trial court's when substantial evidence supporting an injunction exists. *Wood v. Abril*, 244 Ariz. 436, 438, ¶ 6 (App. 2018).

### A.      Series of Acts Requirement

¶8            In the context of an injunction, "harassment" means "[a] series of acts over any period of time" directed at a specific person. A.R.S.

§ 12-1809(T)(1)(a). A petition for an injunction against harassment requires a "specific statement showing *events and dates* of the acts constituting the alleged harassment." A.R.S. § 12-1809(C)(3) (emphasis added). "Section 12-1809 is intended to address a situation in which a person directs harassing conduct at his target *repeatedly*." *LaFaro*, 203 Ariz. at 486, ¶ 15 (emphasis added). That intent is implemented through Rule 25(b) of the Arizona Rules of Protective Order Procedure, which provides that "[a] series of acts means at least two events" and requires a petitioner to allege "a series of specific acts." Conduct must be repetitive, even if minimal, to meet the harassment requirement in the statute. *See* Ariz. R. Protective Ord. P. 25(b).

**¶9**        The requirement of more than one act flows from the need to establish a pattern of harassing behavior. Requiring such a pattern serves an important filtering function, helping courts to differentiate between trivial or isolated incidents and repeated harassing behavior justifying legal intervention.

**¶10**        While the "series of acts" requirement may, at first blush, seem straightforward, Arizona case law on what it takes for there to be "two events" of harassment has become muddied when two acts are alleged to have occurred close in time. In other words, when the harassment occurs in rapid succession, how should courts determine if it is two separate events or a single ongoing event?

**¶11**        This problem arose after this court's decision in *LaFaro,* where the court seemed to conclude that a single conversation involving multiple slurs was not a "series of acts" sufficient to support an injunction against harassment. 203 Ariz. at 486, ¶ 14. In subsequent memorandum decisions, the rule from *LaFaro*—that a single conversation is one act or event— became murky. For example, sending multiple text messages and leaving two voicemails over two days, "regardless of the similarity in content of the messages," is a series of acts. *See Trapp v. Flynn*, 1 CA-CV 22-0125, 2022 WL 16936202, at *1–2, ¶¶ 3–4, 9 (Ariz. App. Nov. 15, 2022) (mem. decision). *But see Muriset v. Power*, 2 CA-CV 23-0054, 2023 WL 6051404, at *2, ¶ 9 (Ariz. App. Sept. 15, 2023) (mem. decision) (referring to a "series of text messages" on a single day as a single act of harassment: "the September 26 text messages amounted to *another act* of harassment") (emphasis added). Instigating a verbal altercation and retrieving a gun during that altercation is a "series of acts," despite being "committed within a short period." *Marshall v. Graulich*, 1 CA-CV 16-0148, 2017 WL 586397, at *1, *3, ¶¶ 2, 21 (Ariz. App. Feb. 14, 2017) (mem. decision). But a physical fight is a "single

incident . . . insufficient to support a finding of harassment" without regard to the number of blows exchanged. *Wood*, 244 Ariz. at 438, ¶ 10.

**¶12** Here, Father testified that on August 17, Brooke told him "'He touched me here,' on her thigh, 'and then here' (indicating [her chest]).[3]" The child did not specify whether the touching occurred over a period of time, nor did she indicate whether the nature of the touching was sexually motivated or even intentional. Brooke conveyed that a touch to the thigh and "then" a touch to the chest occurred. She did not indicate that the touching was separated sufficiently to indicate that two events occurred.

**¶13** During his testimony, Father noted that, when he reported the touching to law enforcement, Brooke could not explain to the detective what happened with any more detail, "[a]nd since—she didn't articulate that she was touched anywhere else, the detectives said that no criminal proceedings could be taken forth." Father did not present any additional evidence indicating when or how Estes allegedly touched Brooke. Absent more, the court abused its discretion by finding reasonable evidence that the touching constituted a series of acts necessary for the issuance of an injunction. *See* A.R.S. § 12-1809(E) (providing that an injunction shall be granted "if the court finds reasonable evidence of harassment of the plaintiff by the defendant during the year preceding the filing of the petition").

**¶14** Father argues that two separate events can occur in any amount of time, no matter how short. We agree, yet Father did not provide clear testimony that the thigh- and chest-touching were two distinct events separated by any amount of time. To quote the trial court, we "don't know what happened exactly." Relevant evidence, including hearsay, is generally admissible to obtain an injunction against harassment. See Ariz. R. Protective Ord. P. 36(a). Yet the only evidence that the thigh- and chest-touching here were separate events was Father's use of the words "and then" when motioning to the court where Brooke said she was touched: "'He touched me here,' on her thigh, and then 'here,' (indicating [her chest])." Given the statutory requirement of a series of acts, the court erred in concluding that Father's use of "and then," without more, was reasonable evidence establishing temporal separation between the alleged acts of harassment. *See* A.R.S. § 12-1809; *LaFaro*, 203 Ariz. at 486, ¶ 15 (noting legislative intent). The dissent's approach, on the other hand, risks creating

---

[3] Father apparently used hand gestures to demonstrate where Brooke said Estes touched her. The petition alleged the touches were to the thigh and the chest.

a revolving door that allows easily offended individuals to repeatedly petition for an injunction on the occurrence of any unpleasant encounter, regardless of how isolated or trivial.

¶15        The two opinions Estes relies upon to support his position are distinguishable. In *LaFaro*, the issue was whether harassing acts directed at different parties could support an injunction against harassment regarding one of those parties, not whether multiple slurs uttered in a single conversation constituted a series of acts. 203 Ariz. at 486, ¶ 14. But even if that had been the issue, the court's holding suggests multiple slurs in a single conversation do not constitute a series of acts: "this conversation was only one act directed at LaFaro, not the 'series of acts' required for injunctive relief." *Id.*

¶16        In *Wood v. Abril*, the court affirmed the holding in *LaFaro*: two separate acts targeting different individuals are not a "series of acts . . . directed at a specific person," and therefore cannot support an injunction against harassment regarding one of the individuals. 244 Ariz. at 438, ¶¶ 8–11; *see* A.R.S. § 12-1809(T)(1)(a). *Wood* involved two incidents: a verbal altercation and a physical fight. 244 Ariz. at 438, ¶ 7. Yet only the physical fight involved the party seeking the injunction against harassment. *Id.* at ¶¶ 8, 10. Because the court determined that the physical fight was a "single incident," it was insufficient to support a finding of harassment. *Id.* at ¶¶ 10–11. Here, we have no record evidence of two separate acts of touching, nor does this case involve acts directed at two individuals. So, Estes' reliance on *LaFaro* and *Wood* is misplaced.

¶17        The record lacks sufficient evidence that the touching to the thigh and the chest were distinguishable events, much less a series of acts. Because there is no reasonable evidence of repeated acts that would cause a reasonable person to feel harassed, the superior court erred by failing to dismiss the injunction. *Cf. Danko v. Dumas*, 1 CA-CV 21-0019, 2021 WL 4164045, at *4–5, ¶¶ 24–29 (Ariz. App. Sept. 14, 2021) (mem. decision) (holding that the superior court did not err in dismissing injunction because none of petitioner's claims were supported by substantial evidence).

## B.        No Allegation of Sexual Violence

¶18        Finally, Father did not allege that the touching was sexual contact as defined by statute. According to A.R.S. § 12-1809(T)(1), in addition to a series of harassing acts, harassment may also be "one or more acts of sexual violence as defined in § 23-371." Sexual violence under A.R.S. § 23-371(J) includes "[s]exual contact," defined as "any direct or indirect

touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body." A.R.S. § 13-1401(A)(3)(a). Sexual contact does *not* include "direct or indirect touching or manipulating during caretaking responsibilities or interactions with a minor or vulnerable adult that an objective, reasonable person would recognize as normal and reasonable under the circumstances." A.R.S. § 13-1401(A)(3)(b). Here, even had Father petitioned based on a sexual contact allegation, the injunction remains unsupported: the record is devoid of evidence of even one act of sexually motivated touching by Estes.

¶19 To be clear, this court acknowledges the importance of taking a child's allegations of unwanted contact seriously. In reversing this injunction against harassment, we are not condoning grooming behavior that precedes sexual abuse. But here, we have no allegation that the touching was sexually motivated, nor do we have evidence that the touching was anything but innocent. We are simply bound by the record presented which lacks sufficient evidence to support the injunction.

## II. Irrational Bias

¶20 Because we find the evidence insufficient to uphold the injunction, we need not address other arguments. But, for the sake of thoroughness, we address and reject Estes' additional claims. Estes next argues the superior court predicated its decision on "irrational bias," ignoring important evidence. "A trial judge is presumed to be free of bias and prejudice and to overcome this presumption, a party must show by a preponderance of the evidence that the trial judge was, in fact, biased." *Cardoso v. Soldo*, 230 Ariz. 614, 619–20, ¶ 19 (App. 2012). Estes supports his argument by pointing to evidence he believed the trial judge "ignored." Because a trial judge is in the best position to evaluate evidence and witness credibility, and because we defer to the judge's determinations, Estes failed to prove bias. *See Goats v. A. J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 171 (1971).

## III. Timeliness of Hearing

¶21 Finally, we dismiss Estes' argument that the court improperly scheduled the contested injunction hearing to occur 11 days after his request, in violation of Rule 38(b)(2) of the Arizona Rules of Protective Order Procedure. When requested, a hearing must be held "within 10 court business days of the request." *Id.* However, Estes did not challenge the timeliness of the hearing below, so he has waived this argument on appeal. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 593–94, ¶ 25 (App. 2021).

**CONCLUSION**

¶22        For all these reasons, we vacate the trial court's decision to continue the injunction against harassment. We grant Estes' request for costs and in the exercise of our discretion deny his request for attorney fees.

**T H U M M A**, J., concurring in part and dissenting in part:

¶23        I agree with a great deal of the Majority's analysis. Father did not allege that the touching was sexual contact; Estes has not shown irrational bias and Estes waived any argument regarding the timeliness of the evidentiary hearing. I agree that this court reviews orders granting injunctions against harassment for an abuse of discretion, affirming when reasonable evidence supports the injunction. *See* Ariz. R. Protective Ord. P. 25(e)(1)(A). I agree that Arizona case law is less than clear when specifying the minimum required showing for a proper harassment finding. I also agree that Father's testimony about what Brooke told him was hearsay, albeit admissible hearsay. And I further agree that, from the record, we "don't know what happened exactly," although the superior court did find Brooke "felt threatened and didn't feel safe, whatever happened."

¶24        Where I part ways with the Majority is the conclusion that the factual record here could not, as a matter of law, support the injunction against harassment issued by the superior court.

¶25        As applicable here, "harassment" means "[a] series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose." A.R.S. § 12-1809(T)(1)(a). As noted by the Majority, the required "series of acts" can occur in any amount of time, no matter how short.[1]

---

[1] The Majority references "two separate events," a paraphrase of the rule-based requirement that a petition seeking an injunction against harassment "must allege a series of specific acts of harassment," adding that "[a] series

¶26      Arguing Father did not prove "two specific acts" of harassment, Estes asserts there was "only one event." Father, however, testified that Brooke said Estes "'touched me here,' on her thigh, 'and then here' (indicating [her chest])." Given the statutory requirement and the standard of review, that evidence–Estes touched Brooke's thigh and then he touched her chest–supports the superior court's finding that Father demonstrated the required "series of acts over any period of time" required for the injunction.

¶27      For that reason, I would affirm the injunction against harassment. And to the extent that conclusion differs from what *LaFaro* identified as the "legislative intent" of A.R.S. § 12-1809, I would depart from *LaFaro*, relying instead on the statutory language requiring a "series of acts over any period of time."



AMY M. WOOD • Clerk of the Court
FILED:   AGFV

---

of acts means at least two events." Ariz. R. Protective Ord. P. 25(b). I use the statutory phrase "series of acts," A.R.S. § 12-1809(T)(1)(a), which the rules use to define "harassment," Ariz. R. Protective Ord. P. 3(c)(1), recognizing a court rule cannot expand the substance of a statute, *State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 595 ¶ 27 (2017).